## CHARLES FONDA *v.* E. D. BEACH.

*Garland* was arrested. He was released on giving a bail bond, with *Beach* as his security,
    conditioned that he should not depart from the State for the term of three months, without
    leave from the court. *Garland* left the State without the leave of the court and within the
    term, but returned shortly after its expiration.* The question was, whether the surety was
    bound.
PRESTON, J., held, that the surety was discharged, on the ground that the bond was not
    intended to prevent a temporary absence, but a permanent departure by the debtor, without
    making a surrender of his property.
SLIDELL, J., concurred in the decree of PRESTON, J.
EUSTIS, C. J., with whom ROST, J., concurred, held, the surety was bound, the condition of
    the bond being broken.
A surety on such a bond, after its condition has been broken, and after judgment rendered
    against the principal, cannot be allowed to falsify the affidavit under which the proceed-
    ings were instituted.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J.
*Durant* and *Horner*, for plaintiff. The security bound himself absolutely
to pay *Garland's* debt, in case he departed from the State within the term of
three months. The condition having happened, the security is bound. He
chose to bind himself in this manner to the sheriff and plaintiff, and must now be
held liable for the debt. The bond would be, in the language of Judge Bullard,
"quite nugatory, if it were not held to be absolutely forfeited by the departure
of the principal, at least, after a return of *nulla bona* on execution against the
principal." *Lindley* v. *Hagens*, 11 R. R. 204.

The fact has been already shown, that the principal, *Garland*, did himself
take a rule to set aside the writ of arrest, which was discharged; and this fact
forms the basis of the third ground of objection to the admissibility of the testi-
mony. The reasons given by the judge for discharging this rule of *Garland's*, are
conclusive, and, what is remarkable, seem entirely discordant with his judgment
in favor of *Beach*, the surety. If the arrest cannot be set aside for *Garland*,
because "more than three months have elapsed since the arrest was issued,
and the same has become inoperative," *a fortiori*, it cannot be set aside for
*Beach*, the surety.

*Villeré* v. *Armstrong*, 4 N. S. 21. "Under the common law, although it is a
rule that the defendant cannot, in general, waive an error apparent upon the
record, without giving a release of errors, yet no objection can be taken to the
sufficiency of the affidavit to hold to bail after the plaintiff has been permitted to
take a subsequent step in the cause. Hence, where the defendant, not being

---

*\**E. L. Backus* and *Alexander Scott* testified, that *Garland* returned to the city of New
Orleans on the last of October or first of November. *Joseph West* testified, that he returned
on the 20th of October.

FONDA
v.
BEACH.

under an arrest, has voluntarily given a bail bond, or has put in or perfected bail, or pleaded to the action, or suffered judgment by default, and notice of executing a writ of inquiry has been given, the defendant cannot, after such an implied acquiescence in the plaintiff's proceedings, object to the affidavit to hold bail." Petersdorf on Bail, p. 196, 10 Law Library, 109.

*Van Matre*, for defendant.

PRESTON, J. The articles 212 and 214 of the Code of Practice, authorizing the arrest of debtors, was amended by the Act of 1840, "to abolish imprisonment for debt." The 2d section of the Act authorizes the creditor to have his debtor arrested, on making oath that he believes him about to depart, permanently, from the State, without leaving in it sufficient property to satisfy his demand.

The supplemental Act of 1840, required the debtor, on his arrest, to give security not to depart the State for the term of three months. The 3d section of the first Act of 1840 made the condition of the bond to be, that the surety should pay the debt if the execution against the principal was returned unsatisfied.

The object of the arrest, still allowed by our laws, notwithstanding the abolition of imprisonment for debt, was to prevent the permanent departure of the debtor from the State, without satisfying the debt, or making a surrender of his property to his creditors.

The oath required has no reference to a temporary absence of the debtor, nor was the arrest designed to prevent his temporary, but permanent departure. If the debtor is unable to give security, he may be imprisoned three months, and must then be discharged; but upon condition of surrendering his property, if required by the creditor, setting forth in a petition to the court, that the debtor had property which might be made available to his creditors.

If the debtor be released on giving bail, the same condition is, by implication, attached to his bond, that he cannot be discharged from liability, under the bond, until the lapse of three months after his arrest, and then, only, on condition that he surrender his property to his creditors, if required. The object of the imprisonment, and of the bond consequent upon the oath, and the arrest, being the same, the conditions of both must be the same. Both were intended to prevent a permanent departure, by the debtor, without making a surrender of his property, if required; both are satisfied if he does so. And both these means of effecting the same object, cease, under the law, at the end of three months, if the creditor does not require, within that time, the surrender of the debtor's property.

The district court very properly refused, in this case, to make an order, as to the debtor, rescinding the arrest, because it had become inoperative by the lapse of the three months. In like manner he should have released the surety, because the three months had elapsed without the permanent departure of the debtor, during which time the creditor might, but had not required the surrender of his property. The surety had prevented a permanent departure of the debtor, during the term allowed to the creditor to require a surrender of property. That property remained subject to his execution, but the person of the debtor was no longer subject to the control of the creditor, under the law abolishing imprisonment for debt.

I do not concur in the reasons given by the district judge for his judgment, that the debtor had no intention to depart permanently when arrested; but upon the principles stated, I think his judgment should be affirmed, with costs.

SLIDELL, J. This case involves the construction of the Act of 28th March, 1840, and the supplementary act of the same year. The first Act is entitled

"An Act to abolish imprisonment for debt," p. 131, a title which seems by no means to harmonize with the body of the statute.

FONDA
v.
BEACH.

The interpretation of much of this statute is involved in serious difficulty, and I confess myself embarrassed in attempting to apply it to this particular case. As the surety's liability under the statute, and the proceedings and evidence in this cause does not seem to me clear, I prefer to leave the judgment of the district court undisturbed.

EUSTIS, C. J., dissenting. The plaintiff, who was a judgment creditor of *James Garland* and others, took a rule on *Beach*, who was one of the sureties of *Garland* on a bond given for his discharge from arrest, for him to show cause why judgment should not be rendered against him on his bond, the condition thereof having been broken by *Garland's* having left the State within ninety days from the date of the same.

The defence of *Beach* was, that the arrest of *Garland* was illegal, inasmuch as the affidavit on which the order of arrest was issued was false, and that *Garland* was not, at the time, about permanently to depart from the State. Evidence was heard on the trial of this rule, and the district judge was satisfied that *Garland* had not intended permanently to leave the State, and discharged the rule, holding the surety to be released from his suretyship.

The plaintiff has appealed, and the question has been argued as to the sufficiency of the matter of defence presented on behalf of the surety.

It is objected that this defence comes too late, because the bond had already become forfeited, and judgment been obtained against the principal, *Garland.*

The petition was filed on the 12th of July, 1851. *Garland* was arrested under the second section of the Act of March, 1840, entitled "An Act to abolish imprisonment for debt." He was released on giving his bond, with *Beach* as one of his sureties, conditioned that he should not depart from the State for the term of three months, without the leave of the court; or in case of his departure without such leave, that the said *Garland*, or his sureties, shall pay the amount of the judgment rendered in the cause, &c.

*Garland* immediately left the State, and did not return until November following. Judgment, by default, was taken against him, but before it was confirmed he obtained a rule against the plaintiff, having for its object to set aside the writ of arrest. The rule was discharged, on the ground that more than three months had elapsed since the arrest. The ground on which this rule was granted, was the alleged falsity of the plaintiff's affidavit, and the consequent illegality of arrest, &c. Execution was afterwards issued on the judgment against *Garland*, and on the return of *nulla bona*, the present proceeding was taken against the surety.

The bond given in this case, under the statute, resembles that formerly required from debtors in custody, to enable them to enjoy what were then called the prison limits which, in New Orleans, at one time were confined to a single street, but afterwards, in 1823, were extended to the limits of the city. The debtor, arrested under this act, has the whole range of the State, and the object of the law giving the creditor the right to restrain him during the three months, is to compel him to pay the debt, or to make an honest surrender of his property under the insolvent laws. There can be no question that the departure of the debtor from the State, during this term, without leave of the court or authority from the creditor, operates a forfeiture of the bond. *Thompson* v. *Blackwell*, 5 L. R. 466. Gwynne on Sheriffs, 156. *Landley* v. *Hagens*, 11 R. R. 204.

It seems to us repugnant to all sound ideas of justice, to allow a surety on a bond like this, after its condition has been broken and after judgment rendered against the principal, to falsify the affidavit under which the proceedings were instituted. It is contrary to the universal practice, and has no semblance of authority to support it here, or elsewhere, that we ever heard of. In *Dalton* v. *Barnes*, 1 Merle and Selwyn, 230, Mr. Justice Bayley said, there was not an instance in which the party, after putting in bail above, had been permitted to take advantage of a defect in the affidavit to hold to bail. Petersdorf on Bail, 196. Tidd's Practice, 1044.

In the case of *Thornhill* v. *Christmas*, cited by the counsel for the defendant, the court permitted the surety, on a bond under this act, to avail himself of the defence that the arrest was not warranted by the statute, it having been made after judgment rendered, as a means of coercing payment by imprisonment, and the proceeding being virtually a reestablishment of the writ of *capias ad satisfaciendum*, which the statute had abolished.

In the cases of *Herrick* v. *Conant*, 4th Ann. 276, and *Quine* v. *Mayes*, 2 R. R. 511, the objections of the sureties were to the validity and effect of the judgment which the sureties bound themselves to satisfy.

ROST, J., concurs in this opinion.